## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| MORGANACTIVE SONGS, INC. et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | 5:04-CV-0145 (CAR) |
| | : | |
| ALICE PADGETT, | : | |
| | : | |
| Defendant. | : | |

_____

### *ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

The present case arises out of the performance of three of Plaintiffs' copyrighted songs at AP's Hidden Hideaway, an establishment owned, operated, managed, and maintained by Defendant Alice Padgett (herein "Defendant").  It is undisputed that Defendant does not have a license from the American Society of Composers, Authors and Publishers (herein "ASCAP").  Plaintiffs filed the present Motion based on Defendant's copyright infringement.  [Doc. 10].  Herein, Plaintiffs contend that they are entitled to summary judgment because Defendant infringed on copyrights that Plaintiffs did not license Defendant to use.  Plaintiffs seek injunctive relief, statutory damages, and costs including reasonable attorney's fees.  Defendant responded to the Motion [Doc. 13], and Plaintiffs replied.  [Doc. 15].

Having now considered all of the relevant case law, arguments of the parties, and the evidence submitted, the Court finds that Plaintiffs have failed to meet their burden of

showing the absence of a triable issue.  Accordingly, and for the reasons discussed below, the Court hereby **DENIES** Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

Morganactive Songs, Inc. (herein "Plaintiffs") are the owners of valid copyrights in the songs involved in this action:  "The Dance," "Pride and Joy," and "Hurts So Good." Plaintiffs are songwriters and music publishers who are members of ASCAP, an unincorporated membership association of more than 190,000 writers and publishers of musical compositions.  On behalf of its members, ASCAP licenses the right to perform publicly all the copyrighted songs in the ASCAP repertory.  [Doc. 10].

Defendant owns and operates AP's Hidden Hideaway, an establishment located at 4274 Broadway in Macon, Georgia.  [Doc. 10, 12].  Musical compositions are publicly performed as part of the entertainment regularly provided at AP's Hidden Hideaway. Defendant did not have a license from ASCAP or permission from any copyright owner on the dates at issue in the instant action.  ASCAP repeatedly warned Defendant for several years that she needed to purchase a license, which would protect her from potential liability for copyright infringement when ASCAP's copyrighted musical compositions were publicly performed in her establishment.  Defendant declined and has not sought or obtained a license from ASCAP.

On the night of November 28 through the early morning hours of November 29, 2003, "The Dance," "Pride and Joy," and "Hurts So Good" were performed live by a band at AP's Hidden Hideaway.  Defendant contends, however, that on the night of November

28 through the morning of November 29, she simply provided her establishment for a Kids Yule Love benefit.  Defendant admits she controls and manages AP's Hidden Hideaway on a general basis but asserts that on the dates at issue, she did not direct the event, schedule the bands, or control any songs they played.  Defendant also claims that she derived no financial benefit from the benefit conducted that weekend.

In response, Plaintiffs have produced a Macon Telegraph calender that states the date and time of the Kids Yule Love Toy Run as Saturday, November 29, 2003 at noon as opposed to November 28, 2003 - the night of the event in question.  Plaintiffs also present the language from a mobile sign located in the far right corner of Defendant's building on the dates in question which read "SAT. NOV 29 DIST. 7 KID U LOVE TOY RUN, FRI-SAT. THE BUTTER CATS, SUN. ON THE DECK BIG MIKE PAPA'S AND THE BOOTY PAPA'S."  Defendant does not dispute the authenticity of either advertisement.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).  However, not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for

the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52.  In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted).  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Thus, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp., 477 U.S. at 323.

**DISCUSSION**

## I.      Copyright Infringement Claims

Plaintiffs have asserted copyright infringement claims against Defendant.  Plaintiffs contend that Defendant is liable for the public performance of three songs for which Plaintiffs own the copyright.  Through the present Motion, Plaintiffs contend that there is no genuine issue of material fact thus entitling Plaintiffs to judgment as a matter of law. For the reasons set forth below, the Court disagrees.

In an action for copyright infringement, a plaintiff must prove the following elements:

(1)      the originality and authorship of the compositions involved;

(2)      compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3)      that Plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4)      that the compositions were performed publicly [by the defendants]; and

(5)      that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

U.S. Songs, Inc. v. Downside Lenox, Inc., 771 F. Supp. 1220, 1224 (N.D. Ga. 1991); see also Major Bob Music v. Stubbs, 851 F. Supp. 475, 479 (S.D. Ga. 1994).

In this case, Defendant does not dispute Plaintiffs' version of the facts except as to the alleged charity event that took place on the dates at issue.  Defendant does not deny that the songs were played or that Plaintiffs own the copyrighted material.  Defendant also admits that she had no license or permission authorizing her to play the copyrighted

material performed on the dates in question.  All of the elements of the test to prove that a copyright infringement occurred are therefore met.  The only remaining issue, therefore, is whether Defendant may be held vicariously liable for the songs performed.

As a matter of law, one may be held vicariously liable for copyright infringement even if she does not perform the protected song herself.  <u>Major Bob Music v. Stubbs</u>, 851 F. Supp. 475, 480 (S.D. Ga. 1994).  For one to be held vicariously liable, she must (1) "ha[ve] the right and ability to supervise the infringing activity" and (2) "ha[ve] a direct financial interest in such activities."  <u>Id</u>.  (discussing "no-profit" defense that stems from 17 U.S.C. § 110(4)(B)).  In fact, Title 17 Section 110(4)(B) of the United States Code provides the following affirmative defense to the infringement of copyright:

> . . . [T]he following are not infringements of copyright:
>
> (4)        performance of a nondramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any of its performers, promoters, or organizers if . . .
>
>> (B)        the proceeds, after deducting the reasonable costs of producing the performance, are used exclusively for educational, religious, or charitable purposes and not for private financial gain
>> . . . .

Apparently relying on the no-profit affirmative defense provided in 17 U.S.C. § 110(4)(B),[1] Defendant contends that although she does not deny that the infringing

---

[1]

In their reply brief, Plaintiffs acknowledge that Defendant has raised this affirmative defense.  (<u>See</u> Plaintiffs' Brief in Reply [Doc. 15] at 2); <u>see also</u> <u>Major Bob</u>, 851 F. Supp. at 479 (noting that the defendant's "'no profit' defense stems from 17 U.S.C. § 110(4)").  Defendant is raising this affirmative defense for the first time on summary judgment.

activities occurred, she may not be held vicariously liable because on the dates at issue, she did not profit from the infringing acts. Defendant asserts that, on the date in question, "Kids Yule Love operated a benefit fundraiser" at her establishment.

Through the present motion, however, Plaintiffs argue that even if the event was a charitable one, Defendant would still be liable for the copyright infringement. Plaintiffs argue that, "[r]egardless of whether the alleged infringer actually profited from the performance itself, it is well established that 'a profit-making enterprise which publicly performs copyrighted musical compositions is deemed to do so for profit.'" U.S. Songs, Inc. v. Downside Lenox, Inc., 771 F. Supp. 1220, 1226 (N.D. Ga 1991) (quoting Gnossos Music v. DiPompo, 13 U.S.P.Q.2d 1539, 1540 (D. Me. 1989)). Plaintiffs also state that the fact that the establishment did not pay the performer does not alter the nature of the profit-making enterprise. Cass County Music Co. v. Vineyard Country Golf Corp., 605 F. Supp. 1536, 1537 (D. Mass. 1985).

Yet, the cases supporting these propositions are factually distinct from the instant action. In those cases, the venue owners merely claim that they did not profit from the music that was played in their for-profit establishments. See e.g. U.S. Songs, Inc., 771 F. Supp. at 1226 (holding that restaurant undisputedly operating *for profit* could not prevail

---

Plaintiffs, however, knew about the proposed defense prior to their motion for summary judgment (based on correspondence with defense counsel in a Jan. 11, 2005 letter and Defendant's answers to interrogatories) and thus, will not be prejudiced by the defense. Plaintiffs additionally do not claim prejudice from Defendant's raising the affirmative defense at this time. See Miranda de Villalba v. Coutts & Co. (USA) Int'l, 250 F. 3d 1351, 1353 (11th Cir. 2001) (court can consider affirmative defense raised for the first time on motion for summary judgment if plaintiff suffered no prejudice from failure to raise defense in a timely manner).

under no-profit defense simply because it did not profit directly from the performance of the music played over its sound system); <u>Gnossos Music</u>, 13 U.S.P.Q.2d at 1540 (finding it irrelevant that restaurant operating *for profit* did not profit directly from using radio performances played over its sound system).  These cases do not rely on the charitable exception of 17 U.S.C. § 110(4)(B), which is the exception at issue in this case.  And while it is true that under normal circumstances actual payment of the performer is not required to establish liability under the Copyright Act, this argument by Plaintiffs similarly does not address the charitable exemption of 17 U.S.C. § 110(4)(B).  <u>C.f.</u>, <u>Cass</u>, 605 F. Supp. at 1537 (finding fact that musician was not paid by venue owner was irrelevant when copyright infringement was made in venue operated *for profit*).  Rather, it appears that, under the charitable exception of 17 U.S.C. § 110(4)(B), a normally for-profit establishment is not deemed for-profit during a charitable event in which the establishment derives no profit.  <u>See</u> 17 U.S.C. § 110(4)(B) ("the following are not infringements of copyright . . . if . . . the proceeds . . . are used exclusively for . . . charitable purposes and not for private financial gain . . .").  The plain language of the statute, therefore, expressly allows for-profit venues an exception from copyright infringement liability to perform charitable services.

Plaintiffs next argue that even if a venue owner can normally escape liability when copyrighted music is performed at a charity event, Defendant in this case cannot escape liability because she has not provided sworn testimony or documentary evidence to support her claim that a charitable event was held on the dates in question.  Plaintiffs in fact contend that there was no charity event held at AP's Hidden Hideaway on the dates in

8

question.  Although Plaintiffs are correct in asserting that Defendant did not provide sworn testimony or documentary evidence to establish that the event on the dates in question was in fact a charitable event,[2] a flaw that would ordinarily be fatal in a lawsuit, the Court does not find Plaintiffs' argument dispositive here.

It is well-settled that on summary judgment the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories . . . which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp.</u>, 477 U.S. at 323 (internal quotation marks omitted).  Here, Plaintiffs have produced a Macon Telegraph calender that states the date and time of the Kids Yule Love Toy Run. While this calender does show the date and time of the Toy Run, it does not state what event, if any, was taking place on November 28, 2004 at AP's Hidden Hideaway.  Also, Plaintiff attests that the language on a portable mobile sign located in the far right corner of Defendant's building on November 28, 2003 read "<u>SAT. NOV 29 DIST. 7 KID U LOVE TOY RUN</u>, FRI-SAT. THE BUTTER CATS, SUN. ON THE DECK BIG MIKE PAPA'S

---

[2]

In response to the present motion, Defendant only submitted her answers to Plaintiffs' interrogatories to support her claim that the event of November 28, 2003 was charitable. These interrogatories, however, are unsworn and unverified.  <u>See</u> Fed. R. Civ. Pro. 33 (mandating that each interrogatory be answered "in writing [and] under oath" and that the answers be "signed by the person making them.").  It appears, in this case, that the interrogatories were answered by Defendant's attorney, and it is impossible to say what part, if any, Defendant had in the answering of the interrogatories.  <u>See</u> 7 James Wm. Moore et. al., Moore's Federal Practice Civil § 33.104 (2005) ("[I]t is not proper or acceptable for the attorney alone to sign or verify responses.").  For this reason, the interrogatory answers submitted by Defendant could not be used as evidence to raise a genuine question of fact on summary judgment.

AND THE BOOTY PAPA'S."  It is undisputed that the Kids Yule Love Toy Run was on Saturday, November 29; but, like the calendar, the sign does not show that the events that took place on November 28th were for-profit and not charitable events as Defendant claims.  This sign only shows that bands did play on the dates in question; Defendant admits this fact.  None of the evidence produced by Plaintiffs establishes that the event on the dates in question was not charitable in nature as contemplated by the Copyright Act, 17 U.S.C. § 110(4)(B).[3]

Thus, regardless of the fact that Defendant did not produce direct evidence or sworn testimony relating to the event that transpired at her establishment on the dates in question, Plaintiffs did not meet their initial burden of demonstrating the absence of a material fact on this issue.  The burden, consequently, never shifts to Defendant, the non-moving party, to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.  As Plaintiffs have not met their burden of showing the lack of a triable issue, summary judgment would be inappropriate at this juncture.

---

[3]

Plaintiffs, however, do not challenge whether this case involved a "transmission to the public," which would place Defendant outside the protection of the relevant exception. See 17 U.S.C. §110(4) (" . . . otherwise than in a transmission to the public . . ."); 17 U.S.C. §101 (defining the term "transmit" for the purposes of the Copyright Act).

Plaintiffs' Motion for Summary Judgment is accordingly **DENIED**.

**SO ORDERED** this <u>28th</u> day of April, 2005.

<u>**s/ C. ASHLEY ROYAL**</u>
C. ASHLEY ROYAL
United States District Judge

MC/JLR/jec

11